is number 09-2726, United States vs. Flemming. Mr. Levin, Ms. McKean. Am I pronouncing that right? Yes, you are. Okay, thank you. Good afternoon, your honors. My name is Peter Levin and I represent the accountant in this case, Glenn Flemming. I would like to reserve five minutes at the end for rebuttal. The statement for review in this case is whether my client, Mr. Flemming, is eligible to receive a motion for reduction of sentence. I have a real question based on the settlement we sent to you. You took the position that the definition of departure in the 2003 commentary was a clarifying amendment, but that doesn't help you. You want it to be substantive, right? Well, I put this as a softball, by the way. I'm sorry? This is a softball. Why? Why even substantive as opposed to clarifying? Well, I guess my feeling was that it was more substantive, but I understand. I actually looked at the government's response also. I believe it would be a clarifying amendment. I'm sorry, the substantive, I'm sorry. It's on to some of the nuances here, but I was surprised when you came back and said that you thought it was clarifying. Right. I did review the governments and I believe that the government was correct, that I didn't get all the nuances and the questions that Okay. You've got here a sentencing in which a judge decided to go under the crack cocaine guidelines. Yes, Your Honor. And instead of the career offender guidelines, correct? And my guess is everyone will probably surmise that if the amendment 706 were in effect at the time of the actual sentencing here, instead of a 24 offense level and a five criminal history level, it would be 22 five, which would get you down to 77 to 96 months. That's pretty clear. We learned from doing that. Do you want to address why you think that's incorrect? In Matteo, Your Honors, obviously Mr. Matteo was a career offender, but there was no departure in that situation other than the fact that he got three points for acceptance of responsibility. Now in brief that was prepared by his counsel, his counsel argued, well, the judge had to look at the crack guidelines in order to figure out exactly what the sentence would be. And I think that they were basing it on the fact that the, that the judge was looking at the crack guidelines, the fact that they were consulted. But I think that is a reason in some of the district court cases at least that people have ended up allowing the amendment to obtain. Is it that you took a nod or a look at 706 on the way up in the progression? No, I mean, we would say that Matteo, the facts in our case here are entirely different because in our case, Judge Brody said that the career offender calculations overstates his criminal record. And she, at that point, she basically did away with it, if I can use those terms, and she adopted what the pre-sentence investigator had before they went into the career offender. Our position would basically be if the, if the crack guidelines were what they are now, then he would have gotten the, the 77 to 96 months that Judge Brody relied entirely on what the crack guidelines under 2D11 was. Why doesn't the policy note to Trump though, the, the, based on provision in the amendment, the, the policy note usually would phrase applicable guidelines? Well, I mean, it's a difficult question. I guess our position is basically that the career offender did not even come into the calculations at this point. After Judge Brody decided that she wasn't going to base the sentence on the career offender guidelines, our position would be it was an entirely new ballgame. She was now basing it on what the, the crack guidelines were. Can there be two sets of guidelines? Could there, I... Why do you, what, what's the added to the guideline? The, the 2D11 is, is, is what our position would be. I know the government's going to argue something different, but our position would be the guidelines 2D11, which was figured out by the, the pre-sentence investigation report when they were doing the report initially. And that, and, and I think when Judge Brody says, well, I really can't reduce the sentence here, and she cites Mateo, I, I think it's a totally different factual situation there. And the other cases I looked at, which, which there, there were denials in other circuits, there was really nothing really exactly on point here, except for maybe Owen Dexter by Judge Tizol and the case from the, the Second Circuit. So I think... There was some... There's a number of district court cases you have. Yes, there were district court cases, but I think the only... Dalzell, Judge Yonah, Judge Schwab, and Judge Shessler. Right. I think the only one that I found in the circuits was basically McGee from the Second Circuit, and I guess more to some degree from the Eleventh Circuit. But it appears, which is what makes this difficult, is that there appears to be some disagreement as to, as to what was being followed in this case, which I, I, I would believe is, I guess that's why your, your Honor has asked this, this case to come to a full argument. Well, to some extent, when you look at the, whether it's applicable guideline range or otherwise applicable guideline range that existed in 2001, what, what does it mean? In other words, what do you... Is it, is it the... It's pretty easy in Matteo when they went off on the final thing they looked at, where they said, we're going to go with the clear offender guidelines, okay. But here, you're into the crack cocaine guidelines. But when you stop and say that we, when you use the words otherwise, or applicable guideline range, and it gets pretty nuanced after that, pretty hairy. And the question is, what's the final step that you look to before you say, okay, yep, this is the applicable guideline range that I'm willing to plug into Section 3553-84? I think the only thing you can do, and I realize it's a difficult situation, and even that doesn't answer it because I'm actually, that doesn't take into account whether you have a 5K1 departure, but anyway, go ahead. I mean, the only thing that I can think you do is you look to what the judge did and does in a particular case, since the judge is really not elucidating in a whole lot of terms as to what she's doing in this case. But she's going to exactly what the pre-sentence investigator said the guidelines would be were it not for the career offender situation. And our position would be is if the sentencing was held today rather than it was held in 2005, then the sentence would have been what Your Honor said originally would have been, I'm sorry, would have been the 77 to 96 months, which means that the judge was exactly looking at the 2D11 situation. So Your Honor, in favor of the McGee interpretation, the Second Circuit's interpretation is purely based on the 2D1 provision, and you're writing out, it seems to me, the applicable guideline in the policy note. Well, we would be agreeing on McGee, and I know the government is going to say the case to the contrary, I believe, from the Eleventh Circuit, but obviously we are agreeing on And you also got cases from the Eighth Circuit, the Toledo case doesn't help you. Not specifically, and that's why I said in the beginning that it appears that there's some disagreements in the various circuits, and I guess we're asking that this court adopt the position that's been put forth in McGee. The mental picture I have for what it's not worth is that the carousel is going around, the spinner is going around, and where it stops is the applicable guideline range, but the question is, where does it stop? And you call it the applicable guideline range. And does it still, for example, if you had the 2003 departure, if it was codifying, this court sentence in 2005 based on the 2001 manual, correct? Yes. If you had the 2003 pronouncements on departure, in effect, and they did apply, then the question is, you can't win. You can win if it's substantive and it's not retroactive. Back. Well, bottom line is, why don't we hear from the government, and let's see where we go from there. Thank you. Thank you. May it please the Court, Bernadette McKeown representing the United States in this case. I think there's a very clear answer to what constitutes the applicable guideline range in this case, and that is the pre-departure career offender guideline range, which was applied before the Court decided to grant an over-representation departure, and there are several bases for my opinion. First, we start with the statute. Mateo started with the statute. Mateo said that the sentence in the range in a career offender case where the defendant, albeit, is sentenced under that career offender range, that is the applicable guideline range. He said the language of the statute was clear and unambiguous. But Mateo says that the sentence must be based on a sentencing range, quote, based on a sentencing range that has subsequently been lowered by the Sentencing Commission, clearly contemplates the end result of the overall guideline calculus, not the series of tentative results reached at various interim steps, which is why it's assumed that it probably takes you to the application instructions as to where to finish. That's correct, Your Honor. And that's what the Court has said. But in his case with Mateo, it says also, quote, if an amended guideline does not have the effect of lowering the sentence range actually used at sentencing, if then the sentence was not based on that range to the intent of the statute, would Judge Wilney actually use the crack cocaine guidelines? Yes, that's correct, Your Honor. But I think there's another step here. And that is answered by the Doe case. In Doe, the Court did have from the senator before the issue of the effect of departure on the applicable guideline. But then you had a mandatory minimum, right? That was a mandatory minimum. But I would suggest that that's exactly, you would come to the same conclusion. Because what Doe said was, Doe steered away from the based on language. And so he won't consider that. Now, we're going to look at what we won't consider. I'm concerned that you put excessive emphasis on the Doe case when you were dealing with a career offender designation that was fully rolled back. And so we have a sentence that I think we can probably all agree that it was clear that Judge Brody based on TV1, correct? I would agree that the ultimate sentence was based on the TV1. But you want to stop at step H. I want to stop at C. And say, all right, that's the penultimate step. And then the departure is coming afterwards. And so the applicable guideline is at H. And it seems to me that there's some compelling logic to, again, the Mickey case where the Second Circuit said that we can be excessively, we ought not be excessively formalistic. The fact is that there is a conflict between the policy note and the amendment. On that basis, we look to the base Doe designation. Why is that not a compelling logic and a way to pursue? If I may take that in parts, Your Honor. I think that the Mickey case, first of all, was the conclusion there was that if there is no such ambiguity in the statute that 1B1.10, that required it to apply the rule of lenity. The Doe case, the Doe court already cited there is no such ambiguity in the statute that 1B1.10. But just for one second. Doe doesn't hold that all applicable departures are from the, all departures are from the applicable guideline range, does it? It does. The whole thing in the context of when you have a mandatory bill. It was. It makes sense. It does make sense. But I would say that the reasoning and logic of Doe applies with equal force here. And that is because you're still applying the same guideline application process. You're calculating the guideline. The guideline range here was the career offender range of 262 to 327 months. Then you take a departure. And the departure comes after the guideline range is set. But the departure, if you look, and maybe I'm looking at the wrong thing in I. I talks about the application instructions refer to parts H or K of chapter five. And that would be your typical 5K1.1 departure. Now it does say, and to any other policy statements or commentary guidelines that might want consideration. My concern here is this was a 4A1.3 departure. It would seem that that would probably fit under application instruction F. I realize there's an argument against that. There's a darn good one. But at least F is specific in saying determine the defendant's criminal history category as specified in part A of chapter four. And that would include 4A1.13. Yes, Your Honor. F does say that. But I think I is. And a 4A1.3 departure is a departure that falls under I. And that's what the Taliaferro court concluded. Yes, Taliaferro court concluded that. Also in Carvalho, although that the First Circuit case involved a variance for the career offender range. They based their decision on the fact that the variance was taken at the very end of the process. I support that because Carvalho basically says you will stop at I. Yes. But Doe says you stop at I if you have a mandatory memory. Doe said, actually Doe says you stop. Doe didn't actually make the distinction between H and I. It simply said 5D1.1 tells us that that is the applicable guideline. Since I stepped on Judge Jones' question, it really comes back to his question. When you've got this kind of confusion, why isn't the Second Circuit right? And I think applied the rule of lenity once in 10 years. Well, I'll tell you why. This might be the paradigm. The Second Circuit in McGee, the reason they applied the rule of lenity, they said it was susceptible to two interpretations. And they said one of those interpretations is that the policy statement limits it to the applicable guideline range. It's the pre-departure range. The second interpretation, they went ahead. They juked ahead of themselves and looked at 1D1.10's comment on the extent of the departure, where it recognizes that where there has been a reduction, saying that where there's been a departure, the court can go below the amended guideline range and get a comparable departure. That does not, to me, there is no conflict at all. That has absolutely nothing to do with the defendant's eligibility and the determination of the applicable guideline range. I think they're wrong. I might agree with you that there is an issue, as rendered by this court, that seems not to find the same conflict between the policy note and the based on provision that the McGee court defines. I think that's your point. However, the way they do that, for the sake of argument, what I'm concerned about is how do you reconcile, if in fact, and you may disagree with this, obviously I wouldn't disagree with this, if in fact we've got a substantive change in 4A1.3, what do you do with the phrase otherwise applicable guideline range that exists in the 2001 determination? Your Honor, I do not believe that the inclusion of the word otherwise is significant and changes the analysis. Because when you read the entire, as the principles of statutory and regulatory construction tells us, when you read the entire guideline, it's very clear that it is talking about the upward departures and downward departures from the guidelines. They use that language throughout there. The only place that that appears, the otherwise applicable guideline range, is in that one section right in the beginning. And I think that that simply means that that's the applicable guideline range that you would be required to apply court in the days of mandatory guideline sentencing, absent your ability to depart because we're giving you the authority to depart. I really don't think it has any significance in that regard. I think that when you read that section, it is very clear that they are referring to a departure from the applicable guideline range. In the absence of the definition of the departure that was later added? Yes, I think that that definition actually clarified things, but they were doing so in the context of placing limitations on the court's authority to depart. So it was for that reason they were saying you can only limit the criminal history category. You cannot reduce the offense category. So you're saying the commission clarified something they didn't have to clarify? I think it was a good change to the extent that there was any confusion, but I really don't think that the word otherwise applicable guideline range, when read in the context of that section of that version of 4A1.3, has any significance and impact on our decision here today. Why was it knocked out then in 2003? Was it just a language cleanup? Well, I think that they were imposing a very significant limitation on the relief that was available under Section 4A1.3. This court in Greer interpreted it as... You can't mess around with offense history. But even more than that, for career offenders, they were limited to a one-level reduction in criminal history category. So, for example, if this defendant had been sentenced under the 2003 amendment, his reduction would have been minuscule. Instead, he received the benefit of the more generous version of 4A1.3 that existed then. So I think that the clarification in the language was nothing more than making it perfectly clear what the limitations were. The flip to that is that we don't know. And if there is a warrant, we ought to see if we can figure out why it's there one time and not the other. And again, when there is some ambiguity in the phrase itself, you look to the regulation, in this case the guideline as a whole, and see if that clarifies it. And I think when the court does that, you'll see that it does. It makes it perfectly clear that that is authorizing a departure from the guideline range. They say the guideline's over and over, and they refer to it as a departure. It's not some different creature where you eliminate it. I mean, that's important. I don't think there's anything that suggests that the career offender guideline range, when an over-representation departure is granted, is eliminated and erased. I mean, Cordero, the reasoning Cordero applies in this situation as well. Because Cordero looked at 5G1.3 and said, okay, that's the final step in the process, and that becomes your guideline range. It's the same thing here. Section 4D1.1 says if your offense level, calculated under Section 2D1.1, is lower, then you apply this offense level. It subsumes and replaces that offense level. The fact that a district court then decides, I think that's the appropriate sentence, they can do that in many contexts. Is it logical, though, and I understand your argument, and I understand the cases that you cite as we look at other departures and where those departures go when they don't reach back to the 2D1 area. Is it logical, though, to deprive this defendant of what the judge actually did in sentencing? It's clear to me from the sentencing transcript, which is to base this sentence on 2D1, and again, to get into the use of the formalistic argument, which I recognize that you disagree with, Washington will be deprived of that. But it's clear to me that the judge based the sentence on the crack guidelines and wrote out the court-offender provision. Because that's what the commission and Congress has told us we should do, that they have put in place a guidance that requires the courts to be consistent and uniform, and they chose the language, the applicable guideline range, not an applicable guideline range, as Judge Fuentes pointed out in Doe. The applicable guideline range is the guideline range before departures. And I think it's because they've told us that's how we have to do it, whether we like it or not. There are many situations in the 5K1.1 context where a court will reference the 2D1.1 range or sentence within the 2D1.1 range. They did that in Doe. But that doesn't mean that that makes that the applicable guideline range. And that was a key point in Doe that I think carries over to this situation. What would make it easy for you to go your way is if the 2003 change was clarifying rather than substantive under 1B.11, 1B.1.11, correct? Well, that would certainly be a question that we would be here arguing about. But you passed on the opportunity to weigh in on whether you thought it was substantive or clarifying. Well, I believe it is very substantive, Your Honor, because it does. And it creates an ex post facto problem to apply that. And, of course, then the commentary that was in place in 2001 also has to be applied. So, yes, there's no question in our minds that 2001 was applied. The other thing I'd like to point out is that your court, I'm sure, is concerned with the fact that here the judge did base her sentence on 2D1.1. But that would lead to arbitrary results. Because if a judge decided to go a little bit above the 2D1.1 range or a little bit below the 2D1.1 range, and certainly all the defendants sentenced after the 2003 amendment where they weren't eligible for that would be precluded from a reduction. And I just think that would lead to unfair and arbitrary results. I see my time is up. I hear the question.  Thank you. Thank you very much. Mr. Levin. I just wanted to add one other point that the government made about the 5K1. The 5K1 situation is different than the government mentioned. Because with the 5K1, the judge basically says, I'm going to go below the guidelines and gives a sentence which is not on the guidelines. And in this particular case, Fleming, the judge, actually gave the guideline sentence. And as Judge Jones has said, Judge Brody based her sentence exactly to a T on what the 2D1 guidelines were. She didn't go below it. She didn't go above it. She based it exactly on the 2D1 guidelines which were set forth by the pre-sentence investigator. And she didn't give you the letter because she perceived she couldn't under Mateo. But what we're saying is, let's assume for the moment Mateo is not a problem. There's still an argument, a good argument that Ms. McKinnon has noted that this may be a departure that was under application instruction I and not under F. And therefore, it would never fit within the applicable guideline range. Well, I understand that that might have been a problem. But I believe that if Judge Brody was not under the, I can't think of the word, not misapprehension, but if she was not under the misapprehension that she couldn't go under Mateo, it would appear that she would have given him a reduction. And then maybe the government would be the impelling and we would be the impelling. I would have nothing further unless your honors have any questions. Thank you very much for your attention. Thank you to both counsel for the well presented arguments to take the matter under advisement. And also thank you both for coming early today. I appreciate that very much. Thank you.